Mr. Chief Justice Sharkey
delivered the opinion of the court.
The questions in this case arise out of the defence of failure of consideration set up in an action on a promissory note given for land. Hayes, the payee, was the original owner, and in October, 1835, he contracted to sell the land to White, and gave a bond to make title at any time after the payment of the purchase-money, to secure which White gave a deed of trust on the land and other property. Hayes was proceeding to enforce the deed of trust for non-payment, and White procured an injunction, which, however, was afterwards dissolved. Hayes was about proceeding again to have the property sold under the deed of trust, when White, on the 10th of February, 1839, entered into a contract with Hoy & Thorn, which is rather obscure and unintelligible, though it professes to assign or transfer to Hoy & Thorn all the property then in White’s possession, *739 in order that they might negotiate with persons holding claims on it, and by so doing prevent a forced sale, and procure titles to themselves from the claimants. On the 26th of February, Hayes conveyed to Hoy & Thorn, after being advised by counsel who inspected the assignment of White, that he would be justified in doing so, and then it was the note sued on was given. Between the time of Hayes’s original agreement to sell to White, and the time he conveyed to Hoy & Thorn, to wit, in June, 1838, a judgment was rendered in the United States court against him, under which the land was sold by the marshal on the 3d of May, 1841,' to one Penny, for five hundred dollars. Hayes had by the same conveyance sold to plaintiffs in error the same negroes he had previously sold to White, the entire price being about the amount due him from White. The negroes, however, were paid for in cash, and thereupon the notes of White were given up to one or the other of the plaintiffs. White went into possession under his purchase, and the plaintiffs were let into possession of the greater part of the land under their purchase, White still occupying the balance. The plaintiffs continued in possession about two years, or until after the land had been sold by the marshal, when they voluntarily abandoned it.
For the plaintiffs in error the case has been discussed in the first place as though Hayes had never contracted with White; and secondly, as to the influence of that sale on the cause.
First, it is assumed that if there was a judgment against Hayes when he sold to plaintiffs, under which the land was afterwards sold, then there was a total failure of consideration which is available as a defence to this action, although Hayes conveyed with general warranty. In support of this position the case of Frisbee v. Hoffnagle, 11 Johnson, 50, is relied on; and it must be confessed, if that case is to be regarded as law, this case must fall under its influence. Divest this case of the feature which is given to it by the previous agreement to sell to White, and the two cases are in all important respects similar. Few cases have been more frequently referred to, and but few have been less regarded, than the case of Frisbee v. Hoffnagle. *740 Chancellor Kent seems to have always questioned this decision, and in a note to the last edition of his Commentaries, he informs us that it is not now regarded as law. 2 Kent, 472. He thinks it was virtually overruled in Vibbard v. Johnson, 19 Johnson, 77; but be that as it may, it was disregarded in Whitney v. Lewis, 21 Wend. 132, 134, and also in Tallmadge v. Wallis, 25 Wend. 107. This last case contains a lengthy review of the question, and it was said that in the case of Frisbee v. Hoffnagle, there was a misapplication of a correct principle. There was no eviction, and besides, the purchaser at sheriff’s sale could only recover mesne profits from the time of his purchase; hence it was said there was not a total failure of consideration.
But these are not the only cases adverse to Frisbee v. Hoffnagle. It is opposed by Lloyd v. Jewell, 1 Greenleaf, 352; by Knapp v. Lee, 3 Pick. 452; and by Wrinkle v. Tyler, 3 Martin’s La. R. (New Series,) 111. In the last case the court said that as the defendant had not been evicted, they could not undertake to decide whether the outstanding title set up by him was better than his own.
The same question was before the supreme court'of the United States in Greenleaf v. Cook, 2 Wheaton, 13. The action was on a promissory note given for a lot, which turned out to be subject to a mortgage, on which proceedings had been instituted, and a decree of foreclosure pronounced, though we may suppose no eviction had taken place. The court threw out a doubt, whether under any circumstances, where a deed had been taken, the grantee could resist payment, and it was said he clearly could not, unless there had been a total failure, which was not the case there, as the equity of redemption might be worth something. And the defendant was holden to be precluded on another ground ; he had purchased with notice of the incumbrance. So it seems, if the vendee has or may receive any benefit, the failure is not total.
In South Carolina, it has been decided that even partial failure may be set up as a defence. 1 Bay, 273. But it was said to be an equitable defence which courts of law had lately let parlies go into on the ground of fraud.
*741 The case of Parham v. Randolph, was a case in equity; the failure was but partial, and the question of fraud was also involved. It furnishes no precedent in support of this defence.
Opposed as the case of Frisbee v. Hoffnagle is, by these several authorities, it cannot be regarded as a safe precedent. In this case, as in that, the covenant of general warranty has not been broken. Such covenant is only broken by eviction. This is conceded in the argument. The covenantee has no right of action on such covenant before eviction. Until then the contract of the covenantor is not broken. How can the contract of the plaintiff which has not been violated, be set up by the defendants to defeat the recovery of the purchase-money? But there was not a total failure for another reason; the defendants held possession under their deed for nearly or perhaps quite two years before the marshal’s sale. They were not accountable for the rents and profits during that time to any one. This brings the case completely within the reasoning of the chancellor in Tallmadgev. Wallis. On this ground, too, it falls within the decision in Greenleaf v. Cook, where it was said the failure was not total because the equity of redemption might be worth something. The possession of this land for two years must have been worth something. This fact, however, in the present case, is not very material where the case is considered under the general warranty; the absence of an eviction is conclusive on the defendants. To obviate this difficulty, it has been insisted that the title was divested by the marshal’s sale as completely as it could have been by eviction. We have not been furnished with any authority to show that a sale either by a marshal or sheriff, is equivalent to eviction. Manifestly it is not so, since the original vendor may still protect his vendee by purchasing from the marshal’s vendee. Or it may happen that the title acquired from the marshal would not be sufficient to effect an eviction. The voluntary abandonment in this instance, gives no strength whatever to the defence. A court of law, although the proper tribunal for the trial of titles to land, will not try such titles collaterally. The proceeding must be direct, otherwise the title cannot be questioned. Where there *742 has been an eviction, the defence of failure of consideration may be let in, because the superiority of the outstanding title is then established by a judicial determination. The inquiry is then narrowed down to a single matter of fact, susceptible of being proved by record evidence. This doctrine is admitted when the vendor conveys by warranty and lets the vendee into possession, there being an outstanding title in another; but it is said the rule does not apply where the vendor has the legal estate, subject to be defeated by sale under a judgment lien. We do not perceive any ground for this distinction. In neither instance is the covenant of warranty broken but by eviction.
We need not inquire how far the defence of failure, of consideration may be set up where there is a covenant of seizin, which is broken as soon as entered into if the vendor has no title. There is no such covenant in this case. Such a covenant can only arise under the statute from the use of the words “grant, bargain and sell,” when there is no express covenant. Where there is an express covenant, that is the extent to which the vendor is bound. An affirmative covenant is negative to what is not affirmed. Sugden on Vendors, 349; Weems v. McCaughan, in MS. and authorities there cited. In New York, it seems, a breach of covenant of seizin may be let in as a de-fence under appropriate pleas where the action will , admit of it, for the purpose of reducing .the plaintiff’s damages. Talhnadge v. Wallis, 25 Wend. 107.
The preceding view of the subject renders it unnecessary for us to go into an investigation of the second proposition of counsel, to wit, what influence had the sale by White to Hoy and Thorn in this cause, since the argument on this subject presupposes the defence to be valid if divested of the influence of that sale. The defence is not available, even if this sale had no influence, as has been insisted. We differ with counsel, however, in regard to the facts. The contract of White seems to have been designed as an assignment or transfer of whatever right he had, and so it was considered by all parties, and if we are correct in this view, then Hoy and Thorn acquired White’s equity, which was prior in point of time to the judgment lien. *743 It may be true that Hayes had a right, on White’s failure to pay, to elect to rescind the contract; but he did not do so; on. the contrary, he was proceeding to enforce it by sale under the deed of trust, when the plaintiffs in error purchased White’s interest, which was on the 10th of February, 1839. This purchase was made in view of incumbrances, and in order that they might prevent a forced sale of the property by compromising with claimants, and obtain title in their own names. On the 26th of the same month, Hays conveyed to them by deed for the same amount of money that was due him from White; and this he did, after being advised by counsel that the contract of White would justify him in doing so. Thinking then as we do, that there has not been such a failure of consideration as to constitute a good defence,
The judgment of the court below must be affirmed.